UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. TOBIAS GARRETT, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 2544 |
| GERARDO ACEVEDO, Warden, | ) ) | The Honorable Ruben Castillo, |
| Respondent. | ) | Judge Presiding. |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, and this Court's June 24, 2008, order, respondent GERARDO ACEVEDO, Warden of the Hill Correctional Center, answers the instant Petition for Writ of Habeas Corpus as follows:

1.    Petitioner Tobias Garrett is currently incarcerated in the Hill Correctional Center located in Galesburg, Illinois, and is identified as prisoner number R05862.  He is in the custody of Gerardo Acevedo, warden of that facility.

2.    Following a jury trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of first degree murder and sentenced to 30 years in prison, later modified to a 28-year sentence.  (*See* Resp. Exh. C, Order in *People v. Garrett*, No. 1-01-3378 (Ill. App. Aug. 4, 2003)).  The testimony at trial established that petitioner was five feet from the victim, the victim raised his hands in a position of surrender, and petitioner shot him.  (*Id.*).  The victim turned to run, and petitioner

shot him again in the back. (*Id.*). Petitioner conceded that he fatally shot the victim, but contended it was in self-defense. (*Id.*). In addition to an instruction on first degree murder, the jury was instructed on self-defense and second degree murder. (*Id.*).

3.     Petitioner appealed, arguing that his conviction should be reduced to second-degree murder because he believed that the use of force was necessary. (Resp. Exh. A, Brief and argument for defendant-appellant in *People v. Garrett*, No. 1-01-3378). The appellate court affirmed the judgment of the trial court, holding that petitioner "did not prove by a preponderance of the evidence that his decision to shoot the victim was motivated by an actual belief that such action was necessary to avert an imminent harm." (Resp. Exh. C at 8). On September 11, 2003, petitioner filed a *pro se* petition for leave to appeal (PLA) the Supreme Court of Illinois, in which he recast his argument: "The State failed to prove beyond a reasonable doubt that petitioner . . . committed the offense of first degree murder [because] the evidence and testimony presented at trial by the State only supported second degree murder." (Resp. Exh. D at 9, PLA in *People v. Garrett*, No. 96969). On December 3, 2003, the supreme court denied his PLA. (Resp. Exh. E, Order denying PLA in *People v. Garrett*, 206 Ill.2d 630 (Table) (Ill. 2003)).

4.     On March 3, 2004, petitioner filed a *pro se* postconviction petition, which was supplemented by counsel on June 28, 2005. (*See* Resp. Exh. I at 5, Order in *People v. Garrett*, No. 1-06-0788 (Ill.App. Oct. 19, 2007); Resp. Exh. L, Vol. II at

C12-30).  There he argued that his trial counsel was ineffective for:  (1) failing to call two witnesses to corroborate his self-defense theory; (2) failing to challenge the State's introduction of evidence pertaining to petitioner's prior use of aliases; and (3) failing to introduce evidence that petitioner is right-handed.  (*Id.*).  On February 23, 2006, following an evidentiary hearing, the postconviction trial court denied the petition.  (Resp. Exh. I at 5, 9).  Petitioner appealed, asserting the same bases for his ineffective assistance of counsel claim.  (Resp. Exh. F, Brief and argument for petitioner-appellant in *People v. Garrett*, No. 1-06-0788).  On October 19, 2007, the state appellate court affirmed the denial of the petition, holding:  (1) petitioner failed to overcome the presumption that counsel's decision not to call two additional witnesses was sound trial strategy; (2) petitioner was not prejudiced by counsel's decision not to call the witnesses; (3) petitioner was not prejudiced by counsel's failure to object to testimony regarding petitioner's prior use of alibis; and (4) petitioner was not prejudiced by counsel's failure to present evidence regarding petitioner's right-handedness.  (Resp. Exh.  I).  In his PLA, petitioner once again pressed his ineffective assistance of counsel claim — relying on the same three bases.  (Resp. Exh. J, PLA in *People v. Garrett*, No. 105681).  On January 30, 2008, the supreme court denied the PLA.  (Resp. Exh. K, Order denying PLA in *People v. Garrett*, 226 Ill.2d 621 (Table) (Ill. 2008)).

5.      On May 5, 2008, petitioner filed the instant habeas petition, arguing: (1) trial counsel was ineffective for:  (a) failing to call two witnesses to support petitioner's self-defense theory, (b) failing to object to testimony regarding

3

petitioner's prior use of alibis, and (c) failing to introduce evidence of petitioner's right-handedness; (2) there was insufficient evidence to prove him guilty beyond a reasonable doubt; and (3) his sentence was not authorized under statute.

6.    Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent has manually filed the following Exhibits under separate cover with the Clerk of this Court:

Exhibit A:    Brief and argument for defendant-appellant in *People v. Garrett*, No. 1-01-3378;

Exhibit B:    Brief and argument for plaintiff-appellee in *People v. Garrett*, No. 1-01-3378;

Exhibit C:    Order in *People v. Garrett*, No. 1-01-3378 (Ill.App. Aug. 4, 2003);

Exhibit D:    PLA in *People v. Garrett*, No. 96969;

Exhibit E:    Order denying PLA in *People v. Garrett*, 206 Ill.2d 630 (Table) (Ill. 2003);

Exhibit F:    Brief and argument for petitioner-appellant in *People v. Garrett*, No. 1-06-0788;

Exhibit G:    Brief and argument for respondent-appellee in *People v. Garrett*, No. 1-06-0788;

Exhibit H:    Reply brief and argument for petitioner-appellant in *People v. Garrett*, No. 1-06-0788;

Exhibit I:    Order in *People v. Garrett*, No. 1-06-0788 (Ill.App. Oct. 19, 2007);

Exhibit J:    PLA in *People v. Garrett*, No. 105681;

Exhibit K:    Order denying PLA in *People v. Garrett*, 226 Ill.2d 621 (Table) (Ill. 2008); and

4

Exhibit L:    Common law record and report of proceeding in *People v. Garrett*, No. 00 CR 17163.

7.    As more fully set forth below, respondent is not entitled to relief.

## ARGUMENT IN OPPOSITION TO PETITION

### Application of the AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) apply to petitioner's habeas corpus petition, which was filed on May 5, 2008.

### Exhaustion of State Court Remedies

Petitioner has now exhausted his available state court remedies on the claims he raises in the instant petition.  *See* 725 ILCS 5/122-1(c).

### Adjudication of the Merits Under AEDPA

The claims raised in the instant petition that were adjudicated on the merits in state court must be examined through the lens of AEDPA.  AEDPA requires that this Court deny habeas relief unless the decision on the merits by a state reviewing court is either "contrary to" or an "unreasonable application of" United States Supreme Court precedent, or was premised on an unreasonable determination of facts.  28 U.S.C. §2254(d)(1)-(2).  The burden of proof falls squarely on petitioner to show that he is entitled to relief under any of these theories.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  Furthermore, this Court is obligated to presume that the state courts know and follow the rules of federal constitutional law.  *Visciotti*, 537 U.S. at 24.

A state court's decision is "contrary to" clearly established federal law only "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). This Court is obligated to deny habeas relief under the "contrary to"clause even if the state reviewing court's decision is not an exemplar of good legal drafting: "[a]voiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

With respect to the "unreasonable application" prong, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The Court has cautioned that "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

I.    **The State Court's Rejection of Petitioner's Ineffective Assistance of Counsel Claim Was Neither Contrary to, Nor an Unreasonable Application of, *Strickland*.**

Petitioner claims that his trial counsel was ineffective for:  (1) failing to call two witnesses in support of petitioner's self-defense claim; (2) failing to object to testimony regarding petitioner's prior use of aliases; and (3) failing to introduce evidence of petitioner's right-handedness.  Petitioner presented this claim in his postconviction petition and appeal, (Resp. Exh. F), and the Illinois Appellate Court resolved this claim on the merits.  (Resp. Exh. I).  That court held that counsel's failure to call the additional witnesses was sound trial strategy, and that petitioner could not show prejudice from any of the alleged errors.  (*Id.*).  Because these conclusions were neither contrary to, nor an unreasonable application of, United States Supreme Court precedent, petitioner is not entitled to relief on this claim.  28 U.S.C. §2254(d)(1).

In analyzing petitioner's claim, the state appellate court correctly identified and relied upon the appropriate United States Supreme Court standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> To establish a claim of ineffective assistance of counsel, a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced by this deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Failure to make the requisite showing of either deficient performance or sufficient prejudice defeats the claim.  *People v. Palmer*, 162 Ill.2d 465, 475-76 (1994).  To satisfy the first prong a defendant must overcome the presumption that contested conduct which might be considered trial strategy is generally immune from claims of ineffective assistance of counsel.  *People v. Martinez*, 342 Ill.App.3d 849, 859 (Ill.App. 2003).  To establish prejudice, a defendant

must show there is a reasonable probability that, but for counsel's insufficient performance, the result of the proceeding would have been different. *People v. Easley*, 192 Ill.2d 307, 317 (2000).

(Resp. Exh. I at 10). The appellate court correctly stated that petitioner had to overcome the presumption that counsel's decisions might be considered trial strategy, citing to state court cases that, in turn, cite *Strickland*. *See Strickland*, 466 U.S. at 689. And it correctly stated *Strickland's* prejudice prong. *Id.* at 694. Under the *Strickland* standard, the appellate court held that trial counsel's decision not to call the additional witnesses was not deficient performance, and that petitioner had not met the prejudice prong regarding any of the three bases for his claim. (Resp. Exh. I). The State appellate court's determination cannot be said to be contrary to United States Supreme Court precedent. *See Williams*, 529 U.S. at 405; *see also Eckstein v. Kingston*, 460 F.3d 844, 851 (7th Cir. 2006) (holding that state court citing directly to *Strickland* did not use "contrary" rule of law under §2254(d)(1)).

Nor are the appellate court's holdings unreasonable applications of that precedent. The statement of the facts by that court is not challenged by petitioner, and thus is presumed to be correct for purposes of federal habeas review. 28 U.S.C. §2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2008). It stated the facts developed at trial as follows:

> The following facts are undisputed. On the evening of July 22, 1999, [petitioner] drove to Austin Town Hall park (the park) in Chicago to visit his sister-in-law, Kim Jones. Jones was also the legal guardian of Chandus Ousley, [petitioner's] brother, who had sustained a gunshot

wound a few weeks prior to this incident during a home robbery. . . . Jones sold drugs in the area with [petitioner's] sister, Niki Garrett (Garrett). The victim also sold drugs in the area. The two had argued earlier that day because Jones' sales were infringing on the victim's turf. After speaking with Jones, [petitioner] approached the victim and shot him twice, wounding him fatally.

\*\*\*

At trial, Latrice Davis testified that she spoke with the victim near the park at approximately 7 p.m. Upon seeing Jones and an unidentified woman approaching, the victim said, "it's about to be some trouble." Davis noted a vehicle with two occupants including [petitioner] drive by slowly. [Petitioner], the driver, looked at Davis and the victim and drove on. . . . Davis saw [petitioner] make a U-turn and park his car. . . . [Petitioner] left his car and strode toward the victim with his left hand in his pocket. When [petitioner] was five feet from the victim, the victim put his hands "over [his] head spread out in a surrender position." Davis saw [petitioner] draw a gun and shoot at the victim. The victim turned to run, and [petitioner] fired another shot. [Petitioner] then walked back to his car and drove away. . . . [A]fter the victim was shot, Jones sang a song which went, in part, What's my [expletive] name? Kim." When initially interviewed by the police, Davis did not inform them that the victim raised his hands shortly before being shot.

\*\*\*

Robert Green testified that, prior to the shooting, he overheard the victim say that he and Jones had gotten into an argument. He also testified that the victim "threw his hands up" before being shot, with his hand stretched outward, the palms extended and facing forward.

\*\*\*

Willie Campbell . . . testified that he observed the earlier argument between Jones and the victim. He testified that the argument was about Jones selling drugs in the neighborhood, and denied that the victim had threatened Jones. Campbell saw [petitioner] arrive at the park, exit his car, and speak with Jones and her friend. Later, he saw [petitioner] approach the victim, who was standing on the basketball court, and shoot him.

9

***

> [Petitioner] testified that he drove to the park on July 22, 1999, to visit
> Jones, who sold drugs near the park.  Jones . . . told [petitioner] that
> she had been arguing with a man who pulled a gun on her and stated
> that he was going to "kill somebody tonight[.]"  Based on his
> conversations with Jones and Garrett, [petitioner] concluded that the
> victim planned to return to the park at nightfall and murder Jones.
> Later, Jones saw the victim and pointed him out to [petitioner].
> Motivated by fear, [petitioner] grabbed Garrett's purse and removed a
> gun, which he placed in his pocket.  [Petitioner] testified that he
> understood "something would probably happen [] when I go [] talk to
> him."  [Petitioner] reentered his car and drove a short distance towards
> the victim.  After parking, [petitioner] told a friend to stay in the car so
> that the victim would not misinterpret [petitioner's] intent.  Upon
> entering the basketball court, [petitioner] told the victim, "hey man,
> what's up.  Come here."  Before [petitioner] was able to indicate that
> he simply wanted to talk, the victim reached into his pants.
> [Petitioner] mistakenly believed that the victim was reaching for a
> firearm.  In fear for his life, [petitioner] drew his gun and started
> shooting.  [Petitioner] testified that he never actually saw the victim
> wield a gun, that he saw the victim "reaching up in his pants" and so
> he "shot right away."  After the incident, [petitioner] fled to Racine,
> Wisconsin.

(Resp. Exh. I at 2-4).  The state appellate court summarized the facts developed at

the evidentiary hearing on petitioner's postconviction ineffective assistance of

counsel claim as follows:

> At the evidentiary hearing, Garrett, [petitioner's] sister, testified that
> she met with [petitioner's] trial counsel prior to [petitioner's] trial.  She
> was subpoenaed and came to court each day of the trial ready to
> testify, but was not called to do so.  Garrett testified that she saw
> [petitioner] shoot the victim.  She testified that, earlier in the day of
> the shooting, the victim showed her a gun and threatened to kill her.
> She told [petitioner] about the threat, who then spoke with Jones, and
> eventually went to the park and found the victim.  When [petitioner]
> yelled, the victim turned around with his hands under the front of his
> shirt and said something inaudible.  Garrett testified that the victim
> "kept fumbling with his shirt," and did not raise his hands into the air
> nor out to both sides.  Then, [petitioner] shot the victim.

10

\*\*\*

On cross-examination, . . . Garrett denied having seen a gun in the
victim's hand. . . .  Garrett spoke with the police for the first time in
October 1999 and told them the victim had threatened her.  She . . .
signed her written statement which did not mention the victim's threat
without reviewing it.  Garrett testified that, at the time of the
shooting, she was helping Jones sell drugs, and that she argued with
the victim, who also sold drugs, about who could sell drugs in the area.

\*\*\*

Jones testified that she was at the park when her brother-in-law,
[petitioner], shot the victim, who had a "competing business interest"
with her. . . .  [E]arlier that day, the victim showed her a gun and
threatened her, saying, "if the [expletive] came to your house last time
and didn't nobody die, the next time we come back, somebody going to
die."  She explained that her brother had been shot during a recent
home robbery, and she understood the victim's threat to mean that he
was the one who had broken into her house.  When [petitioner] arrived
at the park later that day, she told him that the victim had threatened
her and shown her his gun. . . .  [Petitioner] then drove a short
distance before entering the park on foot to talk to the victim.  She was
about 50 feet from [petitioner] and the victim, and had a clear view of
them. . . .  [Petitioner] and the victim were talking when the victim
reached into his pants "as if he was reaching for something" and
[petitioner] shot him.  She denied having seen the victim raise his
hands.  After the shooting, she asked [petitioner], "What did you just
do?  You just F'ed up where I got to stay at."  She denied having said,
"What's my [expletive] name, Kim?"  Jones testified that she met with
[petitioner's] lawyer before trial, and told her about her argument with
the victim and about the victim's hand movements.

\*\*\*

[Petitioner's] trial counsel, Public Defender Jean Herigodt, testified
that she had defended hundreds of murder cases prior to representing
[petitioner].  Prior to filing [petitioner's] answer of self defense in his
murder trial, Herigodt interviewed witnesses, including Garrett and
Jones.  She met with both women in her office and read their police
statements.  She testified:  "I considered both [Jones and Garrett]
possible witnesses in this cases.  As the case went on, I decided that
the best strategy would be to keep them off the stand."  In her

11

judgment, Herigodt believed that "there were more things that would detract from the case if I put [Jones and Garrett] on the stand than would help support the case." Those factors included the fact that the two women were admitted drug dealers, and she believed it might appear to the jury that [petitioner] shot the victim, a rival drug dealer, at their behest. Specifically, putting Jones and Garrett on the stand would "give the State fertile ground to go into the drug dealing [and drug trade] rivalry with the victim." This would focus the jury's attention on the drug dealing as opposed to [petitioner's] theory of self-defense, that [petitioner] "just happened along," heard of threats to his sister and sister-in-law, was concerned, and merely wanted to talk with the victim.

***

Herigodt . . . was also concerned about having Jones and Garrett testify due to possible inconsistencies regarding the victim's hand placement prior to the shooting. Specifically, Herigodt testified that, because she argued at trial that the State's witnesses were inconsistent, putting witnesses on the stand that had any inconsistency could be detrimental to the credibility of the defense.

***

Furthermore, Herigodt . . . did not call Garrett or Jones because the State would have been able to further explore the prior incident in which Jones' home was robbed and [petitioner's] brother was shot, and noted that, although there were prosecutions in that crime, the victim was never named as the offender.

***

Ultimately, in addition to the above reasons, Herigodt decided not to call Jones because she believed that calling her would waive certain hearsay issues on appeal regarding Jones' alleged post-shooting statement to the victim. She also believed that Jones' police statement in which she said she called [petitioner] a "stupid bitch" following the shooting indicated that Jones did not believe the shooting was necessary, which would have detracted from both self-defense arguments and a mitigation to second degree murder. Herigodt believed that this prior statement would have detracted so much from the self-defense theory that "it wasn't worth the corroboration" she could get from Jones' testimony.

12

(Resp. Exh. I at 7-9).

On the first alleged ground of ineffectiveness, the state appellate court initially held that petitioner failed to overcome the presumption that trial counsel's failure to call the additional witnesses was sound strategy.  (Resp. Exh. I at 11).  A "lawyer's decision to call or not call a witness is a strategic decision, generally not subject to review."  *United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005).  Here, there were many factors that made counsel's strategic decision not to call Jones and Garrett a reasonable one.  Both were drug dealers and business rivals of the victim. This created a reasonable concern that the jury would believe petitioner killed the victim at the behest of his sister and sister-in-law to secure their market. Furthermore, Garrett's testimony was inconsistent with petitioner's:  petitioner said he saw the victim reach into his pants, whereas Garrett said she saw the victim reach into his shirt before petitioner shot him.  Had Jones testified, the State might have been able to introduce evidence that following the shooting, Jones called petitioner a "stupid bitch," which could have undermined petitioner's defense that he believed he was acting in self-defense, or in the alternative, that the killing was justified.  Based on these factors, counsel made a sound strategic decision, and her performance was not deficient.  *See, e.g., Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000) (holding that a strategic decision not to call a witness is sound if it is based on the attorney's determination that the testimony the witness would give might on balance harm rather than help the defendant).  At a minimum, the appellate court's holding that counsel's performance was not deficient because her

decision was product of sound trial strategy was not an unreasonable application of United States Supreme Court precedent.

The state appellate court held, alternatively, that petitioner was not prejudiced by counsel's decision not to call Jones and Garrett. (Resp. Exh. I at 12). Two eyewitnesses testified that they saw the victim raise his hands before petitioner shot him. Petitioner admitted he shot the victim "right away." Garrett's proposed testimony was inconsistent with petitioner's version of events; petitioner testified that the victim reached into his pants, whereas Garrett would have testified that he reached into his shirt. Jones' statement to police indicated that she thought petitioner's actions were unnecessary. Furthermore, even if Jones and Garrett's testimony supported petitioner's self-defense theory regarding the first shot he fired, neither contradicts eyewitness testimony that the victim turned to run, and petitioner shot him a second time in the back, and this fact alone negated petitioner's defense. *See*, *People v. Kruger*, 603 N.E.2d 743, 745 (Ill.App. 1992) (holding that even if self-defense was appropriate regarding first shot, second shot was clearly not fired in self-defense where defendant shot victim in back while he was lying on the ground). Thus, there was not a reasonable probability that but for counsel's decision not to call Jones and Garrett, the outcome of petitioner's trial would have been different. The appellate court's holding that petitioner was not prejudiced by counsel's decision was correct and, at a minimum, not an unreasonable application of *Strickland*.

14

On the second ground of ineffectiveness, the appellate court concluded that petitioner was not prejudiced when counsel failed to object to testimony regarding petitioner's prior use of aliases. (Resp. Exh. I at 13). The court reasoned:

> That [petitioner] used a false name upon arrest for the instant crime was properly before the jury. This had already impeached his credibility with the jury, and the further evidence that [petitioner] had used a false name on two prior occasions was harmless, as it merely reflected upon his already suspect credibility. No other crimes evidence was exposed through this line of questioning, and the State did not dwell on the aliases at trial.

(*Id.* at 15). The court's finding of no prejudice was eminently reasonable. The State presented three eye-witnesses to the murder. They contradicted petitioner's assertion that he shot the victim in self-defense. Petitioner admits he shot the victim, and does not contradict eyewitness testimony that he shot the victim a second time as the victim turned to flee. Thus, the appellate court's conclusion that petitioner was not prejudiced by counsel's failure to object to the testimony in question was not an unreasonable application of United States Supreme Court precedent.

Finally, on the third alleged ground of ineffectiveness, the appellate court held that petitioner was not prejudiced by counsel's failure to introduce evidence of petitioner's right-handedness. (Resp. Exh. I at 16). Petitioner contends that this evidence would have undermined the credibility of Davis, who testified that petitioner approached the victim with his left hand in his pocket. (Pet. at 22). The court reasoned:

> Evidence at trial showed that [petitioner] shot the victim after talking with his sister and sister-in-law, who were enmeshed in an argument with the victim regarding drug-dealing turf. Three witnesses, Davis, Green, and Campbell, testified that [petitioner] shot the victim. [Petitioner] admitted having shot the victim. Green testified that the victim "threw his hands up" before being shot, and Campbell testified that the [petitioner] approached the victim and shot him. Davis testified in line with Green and Campbell, with the addition that [petitioner's] left hand was in his pocket as he approached the victim. We fail to see how, but for the lack of evidence presented regarding [petitioner's] handedness, the result of the proceeding would have been different.

(Resp. Exh. I at 16). The appellate court correctly noted that even if evidence of victim's right-handedness would have marginally undermined Davis' credibility, the crucial aspects of her testimony — that petitioner shot the victim, that the victim threw his hands up before the shooting, and that petitioner shot the victim in the back as he tried to run — would not have been called into question. In fact, those parts of her testimony crucial to establishing petitioner's guilt are corroborated by the testimony of two other eyewitnesses and, in key aspects, by petitioner's own testimony. Thus, the conclusion that petitioner was not prejudiced by counsel's failure to introduce evidence of petitioner's right-handedness was not an unreasonable application of *Strickland*.

The Illinois Appellate Court denied petitioner's ineffective assistance of counsel claim because counsel's decision not to call Jones and Garrett was sound trial strategy, and because petitioner was not prejudiced by any of counsel's alleged errors. None of these conclusions were contrary to, nor an unreasonable application

of, United States Supreme Court precedent, and this Court should deny petitioner

relief on this claim.  *See* 28 U.S.C. §2254(d)(1)-(2).

## II.    Petitioner's Other Claims Are Not Cognizable On Federal Habeas Review, And Are Without Merit.

Petitioner's remaining claims are (1) the evidence did not prove his guilt

beyond a reasonable doubt because it demonstrated second degree, rather than first

degree, murder; and (2) his sentence was not allowed under statute.  These claims

are not federal constitutional claims, and are non-cognizable on habeas review.  28

U.S.C. §2254(a) ("[A] district court shall entertain an application for a writ of

habeas corpus in behalf of a person in custody pursuant to the judgment of a State

court only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States."); *see also Estelle v. McGuire*, 502 U.S. 62, 68

(1991); *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001).  "Violations of

state laws are cognizable only if they resulted in fundamental unfairness and

consequently violate a petitioner's constitutional rights."  *Lechner v. Frank*, 341

F.3d 635, 642 (7th Cir. 2003).

### A.    Petitioner's Sufficieny Claim is Non-Cognizable, And Furthermore, Lacks Merit.

Petitioner casts the first of his remaining claims as a violation of *Jackson v.*

*Virginia*, 443 U.S. 307 (1979), which held that the State's evidence must be

sufficient to establish each element of the crime beyond a reasonable doubt.  His

actual claim, however, is of a different, non-constitutional nature.  Petitioner claims

that "the evidence at the petitioner [sic] trial shows that the petitioner [sic] first degree murder conviction should be reduced to second degree murder." This claim is not constitutional in nature. *See Patterson v. New York*, 432 U.S. 197, 210 (1977) (holding that due process does not require the State to prove the absence of state created affirmative defenses). The function and scope of affirmative defenses is covered by state law, not the United States Constitution.

Allowing petitioners to use *Jackson* to attack rulings regarding the application of state created affirmative defenses would create a loophole through which petitioners could attack state law determinations on federal habeas review. *See Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991). In *Bates*, the Seventh Circuit discussed four ways in which a petitioner might allege the evidence against him was insufficient, making clear that the scenario posed by petitioner is not one of them:

> (1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.
>
> (2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.
>
> (3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z, but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z, the court convicts the defendant.

18

> (4) State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y. Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant.

*Bates*, 934 F.2d at 102.  The Court held that the first of these examples was the only situation contemplated in *Jackson*.  *Id.*

Petitioner's claim more closely resembles the fourth example.  The only elements of first degree murder under Illinois law are:  (1) that the defendant's actions resulted in the victim's death; and (2) that the defendant had the requisite mental state at the time.  720 ILCS 5/9-1(a).  Petitioner does not challenge the sufficiency of the evidence regarding either of these elements.  (Pet. at 24-26; *see also* Resp. Exh. D at 9).  His only contention is that he proved a mitigating factor by a preponderance of the evidence, and the State failed to disprove that mitigating factor beyond a reasonable doubt.  (Pet. at 24-25).  However, as petitioner concedes, (Pet. at 25), the absence of a mitigating factor is not an element of first degree murder to be proven by the State, but rather, if petitioner "is on trial for first degree murder and evidence of ether of the mitigating factors . . . has been presented, the burden of proof is on the defendant to prove either mitigating factor by a preponderance of the evidence."  720 ILCS 5/9-2(c).  While the United States Constitution might forbid giving the defendant the burden of persuasion on a particular issue, or prevent the state from changing the burden in a surprising way, neither of those arguments are raised here.  *See Bates*, 934 F.2d at 103.  If the State

court is correct in its interpretation of the statute, then there is no dispute that there was sufficient evidence to convict petitioner.  Petitioner cannot use *Jackson* "as a back door" to challenge the State court's holding, based on State law, that petitioner failed to establish a mitigating factor that would reduce his conviction from first degree to second degree murder.  *Id.*

In any event, petitioner's claim entirely lacks merit.  As a matter of Illinois law, petitioner could not demonstrate that he was guilty of second degree murder. The Illinois Appellate Court held:

> In conclusion, the mitigating factor of imperfect self-defense is not established by a preponderance of the evidence where [petitioner] acts in a manner entirely inconsistent with mortal fear, approaches an unarmed man whose arms are raised in surrender, and shoots him once in the chest and once after he has turned to run away.

(Resp. Exh. C at 10).  Petitioner testified that he saw the victim reach into his pants before petitioner shot.  (*Id.* at 8).  However, multiple eyewitnesses contradicted this testimony, stating that the victim actually raised his hands in a position of surrender before petitioner shot.  (*Id.*).  The credibility of witnesses, and conflicts in testimony, are appropriately resolved by the trier of fact.  *See United States v. Bailey*, 510 F.3d 726, 733 (7th Cir. 2007).  Furthermore, petitioner does not challenge, and in places corroborates, eyewitness testimony that he shot the victim a second time after the victim turned to run; that he approached the victim alone; and that he believed "something" would happen if he confronted the victim, but nevertheless did so, rather than leaving the park.  (Resp. Exh. C at 9).  None of this

behavior is consistent with petitioner's argument that he feared for his life at the time of the murder. A rational trier of fact obviously could have found that the evidence presented at trial constituted first degree, rather than second degree, murder.

> **B.    Petitioner's Challenge to his Sentence Does Not State a Constitutional Claim And, In Any Event, Is Procedurally Defaulted.**

Petitioner's final claim is also inaccurately cast as one implicating federal law: "Petitioner was sentenced to a sentence which does not conform to a statutory requirement under the [sic] Illinois and United States." (Pet. at 27). Petitioner was convicted and sentenced under Illinois law. Any challenge alleging his sentence did not comply with statutory requirements would implicate only Illinois law. As such, it is non-cognizable on federal habeas review. *See Lambert v. Davis*, 449 F.3d 774, 779 (7th Cir. 2006).

"[A] federal court will not normally review a state sentencing determination which . . . falls within the statutory limit." *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997) (internal quotations omitted). Though petitioner alleges his sentence does not comply with Illinois law, (Pet. at 27), he is incorrect. Petitioner was sentenced to thirty years' imprisonment, later modified to a 28-year sentence. (Resp. Exh. C at 1). Under applicable Illinois law at the time of petitioner's conviction, the term of imprisonment for first degree murder, absent aggravating factor, "shall be not less than 20 years and not more than 60 years." 730 ILCS 5/5-

8-1(a)(1)(a).  Because petitioner's sentence is well within state guidelines, it is

virtually immune to habeas review.

The only exception to the bar on reviewing state-imposed sentences, is where

a state sentence is so "extreme and grossly disproportionate to the crime" that it

violates the Eighth Amendment of the United States Constitution.  *Koo*, 124 F.3d at

875 (internal quotations omitted).  Petitioner cannot state a claim on that standard.

His sentence was near the lower end of Illinois's sentencing range for first degree

murder.  He approached an unarmed man, whose arms were raised in a position of

surrender, and shot him.  He then shot the victim again as he turned to run.

Petitioner's sentence is clearly justified.

To the extent petitioner has stated a cognizable claim, it is procedurally

defaulted.  Petitioner's sentencing claim is vague and confusing.  He may be

arguing that his sentence does not comply with Illinois's statutory guidelines.  (Pet.

at 27).  However, it is also possible that he is claiming his due process rights were

violated because the state courts did not admonish him regarding the three year

term of mandatory supervised release that attaches to the end of his sentence.  (Pet.

at 29).  Neither of these claims, nor any other sentencing claim, was ever presented

to the state courts.  Before a federal court can consider a claim of a state inmate, the

state courts must have had a full and fair opportunity to consider constitutional

objections to the inmate's imprisonment.  *Farrell v. Lane*, 939 F.3d 409, 410 (7th

Cir. 1991); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1131-32 (7th

Cir. 1990).  Thus, before considering the merits of a habeas petition, a district court

22

must determine whether the petitioner fairly presented all his claims during the course of the state court proceedings. *Farrell*, 939 F.2d at 410 (citing *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988)). This means that a habeas petitioner forfeits the right to raise an issue in his federal habeas petition if he failed to raise it, inter alia, on appeal to the state's highest court. *Boerckel*, 526 U.S. at 845; *Hadley v. Homes*, 341 F.3d 661, 664 (7th Cir. 2003) (failure to take claim through complete round of appellate process results in procedural default). Claims never raised in state court cannot be raised for the first time in a federal habeas petition. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995); *Burgin v. Broglin*, 900 F.2d 990, 996 (7th Cir. 1990). Petitioner never raised his sentencing claim in state court, and thus it cannot be raised for the first time on habeas review.

A defaulted claim can still be reviewed if petitioner can show either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause" is defined as some external objective factor that impeded compliance. *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The "fundamental miscarriage of justice" pathway is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see House v. Bell*, 547 U.S. 518, 537-38 (2006). A petitioner who asserts

23

actual innocence to excuse a default "must *demonstrate* innocence; the burden is his, not the state's, for the state has the benefit of the jury's verdict." *Buie v. McAdory*, 341 F.3d 623, 627 (7th Cir. 2003) (emphasis in original). "[T]he standard for finding a fundamental miscarriage of justice . . . requires a stronger showing than that needed to establish prejudice under *Strickland*." *Bell v. Pierson*, 267 F.3d 544, 552 (7th Cir. 2001) (citing *Schlup*, 513 U.S. at 327 n.45).

In this case, petitioner has demonstrated neither cause to excuse his default, nor a miscarriage of justice. Petitioner offers no reason to excuse his failure to raise his sentencing claim in the state courts. He filed a direct appeal of his conviction, a postconviction petition, and an appeal from the denial of that petition. And yet, he chose not to raise his sentencing claim at any point. Petitioner cannot excuse his default by cause and prejudice. Nor does petitioner offer any new evidence to prove his actual innocence. In fact, he acknowledges that he shot and killed the victim. And, uncontradicted eyewitness testimony indicates that petitioner shot the victim once in the back as the victim turned to flee. Therefore, petitioner cannot demonstrate a fundamental miscarriage of justice. *See Bell*, 267 F.3d at 553-54 (holding that petitioner had not demonstrated a fundamental miscarriage of justice where his self-defense claim was contradicted by eyewitness testimony that petitioner chased the victim and shot him while he sat in his car). Because petitioner did not present his claim to the state courts, and can not demonstrate

cause, or a miscarriage of justice, to excuse his default, this Court should deny him

relief on this claim. *See Rodriguez*, 63 F.3d at 555.

## CONCLUSION

This Court should deny the instant petition for writ of habeas corpus without granting an evidentiary hearing.  Should this Court hold that any claim that respondent has argued is non-cognizable is a subject for review by this Court, then respondent requests 30 days from the date of that order to respond to those claims on the merits.

August 12, 2008                              Respectfully submitted,

                                             LISA MADIGAN
                                             Attorney General of Illinois

                          By:    s/ Garson Fischer
                                 GARSON FISCHER, Bar # 6286165
                                 Assistant Attorney General
                                 100 West Randolph Street, 12th Floor
                                 Chicago, Illinois 60601-3218
                                 TELEPHONE: (312) 814-2566
                                 FAX: (312) 814-2253
                                 E-MAIL: gfischer@atg.state.il.us

# CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, I electronically filed respondent's **Answer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on the same date, mailed a copy of this document via United States Postal Service to the following non-CM/ECF user:

Tobias Garrett, #R05862
Hill Correctional Center
600 South Linwood Road
P.O. Box 1700
Galesburg, Illinois 61402.


LISA MADIGAN
Attorney General of Illinois

By:     s/ Garson Fischer
        GARSON FISCHER, Bar # 6286165
        Assistant Attorney General
        100 West Randolph Street, 12th Floor
        Chicago, Illinois 60601-3218
        TELEPHONE: (312) 814-2566
        FAX: (312) 814-2253
        E-MAIL: gfischer@atg.state.il.us